UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

ALESIA CANNON, et al., )
)
    Plaintiffs, )
)
v. ) Case No. 1:19-cv-00877
)
AUTOMONEY, INC., et al., )
)
    Defendants. )
)
)

<u>RECOMMENDATION OF</u>
<u>UNITED STATES MAGISTRATE JUDGE</u>

This matter is currently before the Court on Defendants' Motion to Dismiss or, in the Alternative, Transfer Venue [Doc. #5], Plaintiffs' Motion to Remand [Doc. #7], Plaintiffs' Motion for Leave to Serve Limited Jurisdictional Discovery [Doc. #21], and Plaintiffs' Motion for Leave to Supplement Their Brief in Opposition to Defendants' Motion to Dismiss [Doc. #27]. For the reasons stated below, the Court concludes that Plaintiffs' Motion to Remand should be granted because Defendants have failed to show by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. In light of that, Defendants' Motion to Dismiss or Transfer and Plaintiffs' related Motion for Leave to Serve Limited Jurisdictional Discovery and Motion to Supplement should be terminated without prejudice to re-filing in the state court after the remand.

## I. Background

On August 9, 2019, Plaintiffs filed an action against Defendants AutoMoney, Inc. ("AutoMoney") and AutoMoney North, LLC ("AutoMoney North"), in Guilford County, North Carolina Superior Court (Case No. 19CVS7693) alleging that Defendants: (1) violated the North Carolina Consumer Finance Act, N.C. Gen. Stat. § 53-165, et seq.; (2) engaged in unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1; and, in the alternative, (3) engaged in conduct that constituted usury in violation of N.C. Gen. Stat. § 24-1.1, all in connection with vehicle title loans made to Plaintiffs. On August 28, 2019, Defendants removed the action to this Court based on an assertion of diversity jurisdiction, alleging that Plaintiffs are citizens and residents of North Carolina, that Defendants and all of their shareholders and members are South Carolina residents, and that the amount in controversy exceeds $75,000.00.

The Complaint alleges that Defendants engaged in the automobile title loan business in North Carolina as foreign entities established and organized under the laws of the State of South Carolina. (Compl. [Doc. #2] at 2.) Plaintiffs allege that Defendants "conducted business in this state in that Defendants via the Internet, cellular telephone and other media and communication methods solicited, marketed, advertised, offered, accepted, discussed, negotiated, facilitated, collected on, threatened enforcement of and, foreclosed upon automobile title loans with North Carolina citizens." (Id. at 3.) After removing the case to this Court, Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim, or, Alternatively, to Transfer Venue [Doc. #5] arguing, *inter alia*, that as South Carolina entities they do not have sufficient contacts with North Carolina to be subject to

2

personal jurisdiction here. Defendants contend that "each and every title loan contract was applied for, negotiated, executed and funded in South Carolina." (Defs. Br. in Supp. of Mot. to Dismiss [Doc. #6] at 2.) Plaintiffs responded [Doc. #19] and Defendants replied [Doc. #24]. In addition, Plaintiffs filed a Motion to Remand [Doc. #7], requesting that the Court remand the matter to the North Carolina state court, arguing that Defendants had not met their burden of showing that the amount in controversy exceeded $75,000.00. Defendants responded to Plaintiffs' Motion to Remand [Doc. #20] and Plaintiffs replied [Doc. #23]. Plaintiffs also filed a Motion For Leave to Serve Limited Jurisdictional Discovery [Doc. #21] on the issue of personal jurisdiction. Defendants responded [Doc. #25] and Plaintiffs replied [Doc. #26]. On December 9, 2019, Plaintiffs filed a Motion to Supplement [Doc. #27] seeking to supplement their brief in opposition to Defendants' Motion to Dismiss. Defendants responded [Doc. #30] and Plaintiffs replied [Doc. #32].

## II. Motion to Remand

Because the Motion to Remand raises questions of subject matter jurisdiction, the Court considers that Motion first. See Moir v. Andrew, No. 5:20CV1, 2020 WL 2064907 at *3-*4 (E.D.N.C. April 29, 2020) ("If personal jurisdiction raises difficult questions of state law, and subject-matter jurisdiction is resolved as easily as personal jurisdiction, a district court will ordinarily conclude that federalism concerns tip the scales in favor of initially ruling on the motion to remand." (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 586 (1999)).

Under 28 U.S.C. § 1441(a) and § 1332(a), Defendants may remove a civil action brought in state court where the matter involves an amount in controversy that "exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

3

28 U.S.C. § 1332(a). "The burden of establishing federal jurisdiction is placed upon the party seeking removal. Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chemicals Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994) (internal citations omitted). In this case, the parties focus their arguments on the amount in controversy. Accordingly, the Court will focus on the question of whether the amount in controversy is sufficient to establish federal jurisdiction.[1]

Prior to 2011, courts differed with respect to the appropriate standard to apply in evaluating removal based on diversity of citizenship, particularly with respect to the standards to be applied in determining the amount in controversy. See Wright & Miller, Federal Practice and Procedure, § 3702.2, § 3725.1 (4th ed.). However, 28 U.S.C. § 1446(c)(2) was amended in 2011 and now specifies:

> If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—
>
> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks--
>   (i) nonmonetary relief; or
>   (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
>
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

---

[1] In their Brief, Plaintiffs stated that they do not know the citizenship of the members of AutoMoney North, LLC. However, in response, Defendants note that the Notice of Removal specifically asserts that all of Defendants' shareholders and members are South Carolina residents. Plaintiffs have not addressed that issue further, and it does not appear that the Parties quarrel over the diversity in citizenship of the Parties.

4

28 U.S.C. § 1446(c)(2); Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81 (2014) ("This provision, added to § 1446 as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (JVCA), clarifies the procedure in order when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.").

Pursuant to this statutory scheme, the Court begins with the general proposition that the amount in controversy is the "sum demanded in good faith in the initial pleading." 28 U.S.C. § 1446(c)(2); see also St. Paul Mercury Indem. Co., v. Red Cab. Co., 303 U.S. 283, 292 (1938). If the amount in controversy is unclear on the face of the complaint, including where the state practice does not permit a demand for a specific sum or permits recovery of amounts in excess of the specified sum, the defendant may assert the amount in controversy in the Notice of Removal. That amount "should be accepted when not contested by the plaintiff," unless other issues or questions are raised by the Court. Dart Cherokee Basin, 574 U.S. at 87. However, if the plaintiff contests the defendant's allegation regarding the amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. at 88.[2] The

---

[2] This standard is very similar to the standard previously applied in cases in this District. See, e.g., Dash v. FirstPlus Home Loan Owner Trust 1996-2, 248 F. Supp. 2d 489 (2003) ("Both courts ultimately chose the 'preponderance of the evidence' standard which, as noted, is also used within this District. Such a standard gives deference to the principle that a plaintiff's pleading ordinarily controls and recognizes that a '[p]laintiff is, to some extent, still the master of his own claim ...' because, under this standard, a 'plaintiff's claim remains presumptively correct unless the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount.' . . . . 'The preponderance burden forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover more than what is pled . . . [t]he

5

Fourth Circuit has noted that the defendant "bears the burden of *demonstrating* that removal jurisdiction is proper," and the defendant "must provide evidence to show what the stakes of litigation are given the plaintiff's actual demands." Scott v. Cricket Communications, LLC, 865 F.3d 189, 194 (2017) (emphasis in original, internal quotations and ellipses omitted). "The removability of a case depends upon the state of the pleadings and the record at the time of the application for removal." Francis v. Allstate Ins. Co., 709 F.3d 362, 367 (4th Cir. 2013) (internal quotation omitted). Defendants must provide evidence to show that "it is more likely than not that a fact finder might legally conclude that damages will exceed the jurisdictional amount." Scott, 865 F.3d at 196 (internal quotation omitted). To meet its burden, Defendants "must provide enough facts to allow a court to determine—not speculate—that it is more likely than not" that the case belongs in federal court. Id. at 197.

In the present case, the Complaint filed in North Carolina state court does not give a determinate amount in controversy for each individual Plaintiff, but the Complaint specifically provides that "[e]ach Plaintiff alleges as to their individual claim that the matter in controver[s]y does not exceed the sum or value of $75,000.00, exclusive of interest and costs." (Compl. at 11.) Plaintiffs contend that by this assertion in the Complaint, no individual Plaintiff seeks damages in the amount of, or valued at, $75,000.00 or greater. However, Defendants contend that North Carolina law does not limit Plaintiffs to the amounts set out in the Complaint, and that "without a binding stipulation that Plaintiffs will not later pursue

---

defendant must produce evidence that establishes that the actual amount in controversy exceeds $[75],000.'" (quoting De Aguilar v. Boeing Co., 47 F.3d 1404, 1410-12 (5th Cir. 1995)).

6

or accept a recovery in excess of $75,000, Plaintiffs are not bound by the amount pleaded in their prayer for relief." (Defs.' Resp. [Doc. #20] at 5.)

Because the Complaint leaves the precise amount of damages unspecified, and because North Carolina Rule of Civil Procedure 54(c) permits recovery of amounts in excess of the sum demanded, it appears that 28 U.S.C. § 1447(c)(2)(A) would apply, and the Court therefore considers whether Defendants have established by a preponderance of the evidence that at least one Plaintiff asserts claims greater than $75,000.00.[3] To meet this burden, Defendants have offered evidence reflecting the account balance for five Plaintiffs, and offered calculations of damages for two of those Plaintiffs. (Derbyshire Decl. [Doc. #1-3] at 3.) In the Motion to Remand, Plaintiffs "do not question the principal, interest and fee payments and the unpaid principal balances" that Defendants set out in the Declaration. (Pls.' Br. [Doc. #9] at 7.) However, Plaintiffs do take issue with Defendants' characterization and calculation of the damages sought.

Specifically, in the Motion to Remand, Plaintiffs note that even using Defendants' numbers for the two Plaintiffs with the highest value claims (Plaintiff Bunch and Plaintiff Nixon), the damages for the First Cause of Action (the North Carolina Consumer Finance Act under N.C. Gen. Stat. § 53-166) total $25,647.99 for Plaintiff Bunch and $27,922.08 for Plaintiff Nixon, which includes principal, interest, fees, and voiding of any unpaid balance. In the Second Cause of Action, Plaintiffs seek treble damages under N.C. Gen. Stat. § 75-1.1 for

---

[3] The amounts asserted by each Plaintiff are not aggregated; instead, at least one Plaintiff must individually satisfy the amount in controversy. If at least one Plaintiff satisfies the amount in controversy requirement, the Court has supplemental jurisdiction over the claims of other Plaintiffs in the same case or controversy, even if those claims are for less than the requisite jurisdictional amount. Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546 (2005).

7

the principal, interest, and fees (but not the unpaid balances that would be voided), which would total $68,159.28 for Plaintiff Bunch and $65,668.29 for Plaintiff Nixon. Adding in the unpaid balances that would be voided results in a total possible claim of $71,087.51 for Plaintiff Bunch and $71,700.94 for Plaintiff Nixon on Counts One and Two, as reflected in greater detail in the charts set out in the briefing. Plaintiffs contend that these calculations reflect that even with the treble damages, these amounts are still below the $75,000.00 jurisdictional threshold. Plaintiffs bring, in the alternative, a Third Cause of Action for usury in violation of N.C. Gen. Stat. § 24-1.1, which would result in a claim of $28,464.21 for Plaintiff Bunch and $35,836.81 for Plaintiff Nixon, but Plaintiffs contend that under North Carolina law, they cannot recover both a claim for usury and a trebled claim under Chapter 75, so these amounts for Count Three would be in the alternative (not in addition) and would not be trebled.

In Response to the Motion to Remand, Defendants provide a supplemental accounting statement as to the principal, fees, and interest paid and the outstanding balances. Using these numbers would result in a total claim of $72,310.62 for Plaintiff Bunch and $72,300.29 for Plaintiff Nixon on Counts One and Two, or alternatively $29,687.32 for Plaintiff Bunch and $36,436.16 for Plaintiff Nixon on Count Three. Defendants nevertheless contend that the amount in controversy exceeds $75,000.00 as to at least one Plaintiff. In support of this contention, Defendants raise three assertions: (1) that Plaintiffs may attempt to claim both usury damages under Count Three <u>and</u> treble damages under Count Two; (2) that Plaintiffs may attempt to claim punitive damages rather than treble damages; and (3) that Plaintiffs assert claims for attorney's fees that would result in at least one Plaintiff's claims exceeding the jurisdictional threshold.

8

As to the first contention, Defendants assert that "[i]t is not legally certain under North Carolina law" that Plaintiffs could not recover both usury damages and treble damages, either because the claims could be based on different conduct or because there remains an unresolved issue of North Carolina law on this point. (Defs.' Resp. at 12-13.) However, the Complaint itself clearly asserts these claims in the alternative and does not seek treble damages on the usury claim, and Plaintiffs have confirmed before this Court that those claims are only asserted in the alternative and that North Carolina law would not allow recovery for treble damages on the usury claim. (Pls.' Br. at 8-11.) As to the second contention, Defendants similarly assert that Plaintiffs have "artfully avoided claiming punitive damages, while setting the stage for such a claim." (Defs.' Resp. at 14.) Defendants note that "Plaintiffs could elect to seek punitive damages of up to $250,000.00" (Defs.' Resp. at 15), clearly above the $75,000.00 threshold. However, the Complaint does not include any claim for punitive damages, and Plaintiffs have confirmed before this Court that "[i]f it were the intent of Plaintiffs to assert punitive damages claims against Defendants in this action they most assuredly would have done so in their Complaint. They have chosen not to bring that claim and will not bring it in the future." (Pls.' Reply [Doc. #23] at 8.) That fact that Plaintiffs *could* seek punitive damages, or *could* assert claims for both usury and treble damages, but have not, fails to establish that it is more likely than not that the amount in controversy exceeds $75,000.00. See Bartnikowski v. NVR, Inc., 307 F. App'x 730, 736 (4th Cir. Jan. 16, 2009) ("Thus part of the removing party's burden is to show not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands." (quoting Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir.2005)); Pippins v. Automoney,

9

Inc., No. 1:20CV65, 2020 WL 1692366 at *4 (M.D.N.C. April 7, 2020) ("Defendant provides no authority supporting its proposition that a law firm's history of bringing a claim on behalf of one party makes it more likely to bring that claim again on behalf of a second party where the second party has already consciously chosen not to bring the claim and has disavowed any intent to bring it in the future.").

As to the third contention, Defendants assert that the amount in controversy exceeds $75,000.00 as to at least one Plaintiff because Plaintiffs also seek attorney's fees under N.C. Gen. Stat. § 75-1.1 and § 75-16.1.[4] Defendants argue that when attorney's fees are added to the total claim of $72,310.62 for Plaintiff Bunch or $72,300.29 for Plaintiff Nixon on Counts One and Two, the total will exceed $75,000.00, even with attorneys' fees of only $3,000.00 for each Plaintiff. In support of this contention, Defendants note that attorney's fees representing a one-third contingency would clearly exceed $3,000.00 as to Plaintiff Bunch or Plaintiff Nixon, and alternatively that using Plaintiffs' counsel's hourly $350 rate, the total hours for each of these Plaintiffs would result in fees in excess of $3,000.00. In Reply, Plaintiffs concede that "[i]f Plaintiff Bunch was the only plaintiff in this matter, Defendants' suggested attorneys' fee may amount to more than speculation." (Pls.' Reply at 4-5.) However, Plaintiffs note that

---

[4] "Generally, attorney's fees are not included in the amount-in-controversy calculation, but courts have created two exceptions to this rule: (1) if the fees are provided for by contract; or (2) if a statute mandates or allows payment of attorney's fees." Francis, 709 F.3d at 368 (quotation omitted). Here, North Carolina Gen. Stat. § 75-16.1 provides that:
    In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that:
    (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit; or
    (2) The party instituting the action knew, or should have known, the action was frivolous and malicious.

there are <u>one hundred forty-eight</u> Plaintiffs in this case, and the legal work is common to and benefits all Plaintiffs. See <u>Ratliff v. Sears, Roebuck and Co.</u>, 911 F. Supp. 177, 179 (E.D.N.C. 1995) ("The relevant North Carolina statutes do not contain language specifically providing for fees to 'representative parties.' Instead, the statutes provide for a 'reasonable attorney fee to . . . the attorney representing the prevailing party,' N.C. Gen. Stat. § 75–16.1 . . . . Thus, any award of attorneys' fees as estimated by defendant will not provide the court with subject matter jurisdiction because the fees would be prorated among all members of the plaintiff class."); <u>Dash v. FirstPlus Home Loan Owner Trust 1996-2</u>, 248 F. Supp. 2d 489, 499 n.10 (M.D.N.C. 2003) ("The Court is mindful of the fact that any estimated award of attorneys' fees must be prorated among all members of the plaintiff class." (internal quotation omitted)). As noted by Plaintiffs, a fee award of $3,000.00 per Plaintiff would result in a total fee award in this case of $444,000.00, representing 1268 hours of attorney work, well beyond any reasonable amount for a claim under N.C. Gen. Stat. § 75-1.1 and § 75-16.1. <u>See, e.g., United Laboratories, Inc. v. Kuykendall</u>, 335 N.C. 183, 437 S.E.2d 374 (1993) (holding that in making an award of fees under § 75-16.1, the court must make findings of fact "as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney," as well as "the novelty and difficulty of the questions of law; the adequacy of the representation; the difficulty of the problems faced by the attorney, especially any 'unusual difficulties'; and the kind of case . . . for which the fees are sought and the result obtained" (internal citations and quotations omitted)). In addition, Plaintiffs have submitted a Declaration from counsel reflecting that 60 attorney-hours have been expended in total in this case, with no individual work for any specific Plaintiffs, which would then reflect a total

11

attorneys' fee incurred to date on a per-Plaintiff basis of $141.89. Plaintiffs thus contend that Defendants' assumption that attorneys' fees would total more than $3,000.00 per Plaintiff is pure speculation. In light of this showing, the Court agrees with Plaintiffs that it is highly unlikely that Plaintiffs' counsel could claim attorneys' fees of near or over $400,000.00 in this case under N.C. Gen. Stat. § 75-16.1, and there is no basis to find a claim for any individual Plaintiff of a greater proportion of the attorneys' fees. Defendants have not shown that for any individual Plaintiff "it is more likely than not that the attorney's fees likely to be incurred . . . will exceed the jurisdictional threshold" when added to their respective claims. Francis, 709 F.3d at 368; see also Barnikowski v. NVR, Inc., 307 F. App'x 730, 736 n.12 (4th Cir. Jan. 16, 2009) ("At this stage of litigation, however, an estimate of attorneys' fees is pure speculation, and thus, on this record, cannot be used to augment the amount-in-controversy calculation.").

Finally, the Court notes that Defendants also argue that Plaintiffs have failed to enter into a binding stipulation that they will not seek or accept more than $75,000.00, and that Plaintiffs are not bound by the assertion in the Complaint that the amount in controversy does not exceed $75,000.00. As noted above, under North Carolina law, Plaintiffs are not limited to the amounts requested in the Complaint, and the Court has taken that into account in applying 28 U.S.C. § 1447(c)(2)(A)(ii) and has therefore considered whether Defendants have shown by a preponderance of the evidence that the amount in controversy exceeds $75,000.00 under 28 U.S.C. § 1447(c)(2)(B). For the reasons set out above, the Court finds that Defendants have failed to make the requisite showing. To the extent Defendants contend that Plaintiffs should be required to file a stipulation limiting damages before the case can be

12

remanded, cases in this Court have not imposed such a requirement. See Pippins v. Automoney, Inc., No. 1:20CV65, 2020 WL 1692366 at *3 (M.D.N.C. April 7, 2020) ("Furthermore, Defendant has not identified any applicable law that requires a plaintiff to make such a stipulation, nor is the Court aware of any case that holds such a stipulation is necessary." (internal quotation omitted)); see also Blettner v. Masick, No. 1:15CV474, 2015 WL 7575924 (M.D.N.C. Nov. 25, 2015) (remanding case for failure to establish requisite amount in controversy even though Plaintiff refused to stipulate that her damages fell below $75,000, but noting that Plaintiff should be bound by her representations in her briefing that she was not aware of any basis for a damage award above the federal jurisdictional threshold). Instead, the Court considers the information presented under the standards set out in § 1447(c)(2).[5]

The Court notes, however, that after remand, if any of the Plaintiffs in this case request or seek both usury damages and treble damages, or add a claim for punitive damages, or otherwise request an amount of attorneys' fees or other damages that would result in a claim exceeding the jurisdictional threshold, Defendants would be entitled to remove again under § 1447(c)(3), and in light of Plaintiffs' representations here, the Court in that instance would apply § 1447(c)(3)(B) allowing the notice of removal to be filed more than 1 year after

---

[5] The Supreme Court has noted that a plaintiff may stipulate to a claim below the jurisdictional amount prior to removal, which would preclude the Court from exercising jurisdiction, "but events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control of the result of his volition, do not oust the district court's jurisdiction once it has attached." Standard Fire Ins. Co. v. Red Cab Co., 568 U.S. 588, 592, 595 (2013). In some cases, courts have permitted and considered post-removal affidavits or stipulations during their remand determination process in instances where the amount in controversy was not clear on the face of the complaint. See, e.g., Lawson v. Tyco Elecs. Corp., 286 F. Supp. 2d 639, 642 (M.D.N.C. 2003). In any event, in the absence of such a stipulation, the question is whether the removing party has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000.00, as discussed at length above.

commencement of the action, based on a finding that "plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal." 28 U.S.C. § 1447(c)(3)(B). In this way, § 1447(c) has designed a specific process for protecting Defendants from potential manipulation by Plaintiffs. In light of this framework, Defendants' concerns regarding possible future changes in Plaintiffs' claims would not provide a basis for this Court to exercise jurisdiction, given that Defendants have not—on the present record—shown that it is more likely than not that the amount in controversy exceeds $75,000.00. In light of this analysis, the Court will recommend that the Motion to Remand be granted.

### III. Remaining Motions

As noted above Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim, or, Alternatively, to Transfer Venue [Doc. #5] arguing, *inter alia*, that as South Carolina entities they do not have sufficient contacts with North Carolina to be subject to personal jurisdiction here, and alternatively that the Court should exercise its discretion to transfer the case to the United States District Court for the District of South Carolina under 28 U.S.C. § 1404(a) for the convenience of the Parties and the witnesses. Plaintiffs responded and also filed a Motion For Leave to Serve Limited Jurisdictional Discovery [Doc. #21] on the issue of personal jurisdiction. In addition, Plaintiffs filed a Motion to Supplement [Doc. #27] seeking to supplement their brief in opposition to Defendants' Motion to Dismiss.

If it were necessary to reach Defendants' Motion to Dismiss or Transfer, the Court would conclude that Plaintiffs should be given the opportunity to conduct discovery on the

question of personal jurisdiction.[6] However, in light of the Recommendation that the case should be remanded for lack of subject matter jurisdiction, these motions should be denied as moot, without prejudice to re-filing with the state court following the remand.[7]

## IV. Conclusion

IT IS THEREFORE RECOMMENDED that Plaintiffs' Motion to Remand [Doc. #7] be GRANTED, and that this case be remanded to Guilford County Superior Court.

IT IS FURTHER RECOMMENDED that Defendants' Motion to Dismiss or Transfer [Doc. #5], Plaintiffs' Motion to Conduct Jurisdictional Discovery [Doc. #21], and Plaintiffs' Motion to Supplement [Doc. #27] be DENIED AS MOOT without prejudice to re-filing in state court following the remand.

This, the 12th day of May, 2020.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[6] "[T]he decision of whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court." Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 216 n.3 (4th Cir. 2002). "When plaintiff can show that discovery is necessary in order to meet defendant's challenge to personal jurisdiction, a court should ordinarily permit discovery on that issue unless plaintiff's claim appears to be clearly frivolous." Rich v. KIS Cal., Inc., 121 F.R.D. 254, 259 (M.D.N.C. 1988)).

[7] In a Suggestion of Subsequently Decided Authority [Doc. #36], Plaintiff submitted a North Carolina Superior Court opinion in a similar case (19CVS5900) concluding that a South Carolina title loan company was subject to personal jurisdiction in North Carolina, having purposefully availed itself of the privilege of conducting business in North Carolina, making use of the North Carolina Department of Motor Vehicles to record its security interests, exercising its contractual right to possession of the plaintiffs' vehicles in North Carolina, and creating continuing obligations between itself and plaintiffs in North Carolina, and further finding that the plaintiffs' claims arose from and relate to the defendant's activities in North Carolina. Any further analysis of that case, and its application in the present case, would be for the state court on remand rather than this Court. With respect to the request to transfer venue, Plaintiffs filed a Suggestion of Subsequently Decided Authority [Doc. #31] with a decision from the United States District Court for the District of South Carolina (2:19-2217), declining to entertain a declaratory judgment action filed by AutoMoney, Inc. in South Carolina, and instead deferring to the case already proceeding in North Carolina. That North Carolina case was originally filed in state court, was removed to this Court, and has now been remanded back to North Carolina state court. Pippins v. Automoney, Inc., No. 1:20CV65, 2020 WL 1692366 (M.D.N.C. April 7, 2020).